IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Clemson University, ) | |
| ) | Civil Action No. 8:04-739-HFF-BHH |
| Plaintiff, ) | |
| ) | **O R D E R** |
| vs. ) | |
| ) | |
| Inter-Industry Conference on Auto ) | |
| Collision Repair, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on several motions filed by the plaintiff. The motions were referred to this court pursuant to Title 28, United States Code, Section 636, by order of the Honorable Henry F. Floyd, United States District Judge. In its complaint, plaintiff Clemson University ("plaintiff" or "Clemson") seeks the court's declaratory judgment that it may use the "ICAR" brand to promote its International Center for Automotive Research project. The defendant Inter-Industry Conference on Auto Collision Repair ("defendant" or "Inter-Industry"), which is a corporation that offers courses training auto body repair mechanics and insurance adjustors on auto body repair and damages analysis, counterclaimed for trademark infringement, arguing that Clemson's use of the ICAR brand conflicted with the defendant's registered trademark, "I-CAR."

***Motions to Compel***

*Motion filed December 10, 2004*

      On December 10, 2004, the plaintiff filed a motion to compel seeking a privilege log and responses to requests for production numbers 5, 6, and 8-12. The defendant responded on December 28, 2004, that it was in the process of preparing a

privilege log and it would produce documents responsive to the requests. If the defendant has not already produced documents responsive to the above requests along with its privilege log, it is directed to do so within ten (10) days of the date of this order.

*Motion filed January 11, 2005*

On January 11, 2005, the plaintiff filed a motion to compel "Paul Keith Morris to fully and appropriately respond to questions concerning the identity of an alleged witness" (pl. 2nd m. to compel 1). Morris is an instructor of auto collision repair at R.D. Anderson Applied Technology Center. He also teaches I-CAR education courses as an independent contractor (Morris resp. to pl. m. for rule to show cause 2). During his deposition on December 20, 2004, Morris stated that the plaintiff was aware of the "ICAR" name being used by another party prior to the plaintiff's selection of the name to refer to its International Center for Automotive Research. Morris testified that revealing the source of this information "would cost the man his job," and he would not reveal the man's name (Morris dep. 136-37). Later in his deposition, Morris stated that he could not remember "exactly who told [him] that." He refused to give a list of possible names because he did not want to give a wrong name (Morris dep. 145-46). The plaintiff argues that since Morris has "lobbed the charge of willful infringement," he is "obliged to make good his assertion" (pl. 2nd m. to compel 4).

Morris, who is represented by the same counsel representing Inter-Industry, responds by arguing that the motion was not ripe for consideration by this court as Morris has agreed to appear for an additional deposition and has previously testified that if he remembers the name he will reveal it. Counsel also represented that neither they nor Inter-Industry are aware of the individual mentioned by Morris at his deposition. Based upon the foregoing, the plaintiff's motion is denied at this time.

*Motion filed January 12, 2005*

On January 12, 2005, the plaintiff filed a third motion to compel seeking responses to its requests for admission numbers 15-18. Requests for admission 15 and 16 ask the defendant to admit or deny that "Defendant has no legal right to prohibit Clemson University from using 'International Center for Automotive Research' as a service mark for promotion of real estate development of a research and technology park" and "Defendant has no legal right to prohibit Clemson University from using 'Clemson University International Center for Automotive Research' as a service mark for promotion of real estate development of a research and technology park," respectively. The defendant responded as follows to both requests:

> I-CAR has not objected to Clemson's use of "International Center for Automotive Research" as a service mark for promotion of real estate development of a research and technology park. Therefore, I-CAR objects to the Request as hypothetical and it improperly requires I-CAR to assume facts and then make conclusions of law from assumed facts.

(Pl. 3rd m. to compel, ex. B).

The plaintiff argues that the responses are insufficient as there is nothing hypothetical about the requests and the requests are framed in terms of a legal right to prohibit. The plaintiff further argues that the requests are appropriate under Federal Rule of Civil Procedure 36, which permits requests to admit "that relate to statements or opinions of fact or the application of law to fact." Fed.R.Civ.P. 36(a).

Requests for admission 17 and 18 asked the defendant to admit or deny that "Defendant has no legal right to prohibit the news media from using ICAR when reporting the news about Clemson University's research and technology park known as the 'International Center for Automotive Research'" and "Defendant has no legal right to prohibit the news media from using ICAR as an abbreviation for 'International Center for Automotive Research' when reporting the news about Clemson University's research and technology

3

park," respectively. The defendant responded as follows to both requests: "Defendant objects to this request as hypothetical and because it requires I-CAR to assume facts and then make conclusions of law from the assumed facts" (pl. 3rd m. to compel, ex. B). The plaintiff argues that the requests are not hypothetical as the news media are using the designation "ICAR" when reporting the news about Clemson's research and technology park.

In *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 130 F.R.D. 92, 96 (N.D. Ind. 1990), the court held that a request that sought the "bald legal conclusion" as to whether certain patent claims were invalid impermissibly sought a legal conclusion that violated Rule 36, as such requests depended on various factual inquiries. In *Fulhorst v. United Technologies Auto., Inc.*, C.A. No. 96-577-JJF, 1997 WL 873548, *2 (D. Del. Nov. 17, 1997), the defendant requested that the plaintiff admit the following:

> The "panic alarm" components manufactured and sold by UTA for installation in a vehicle by an automotive OEM (which SAF-T-NET accuses of infringing claims of the '178 patent) would not infringe claims 3-5 of the '178 patent if such components were used a part of a "car finder" ("car locator") feature in a vehicle installation having identical structure and software.

*Id.* The plaintiff in *Fulhorst,* like the defendant in the instant case, objected to the request on the grounds that it was hypothetical and improperly called for legal opinion. In response, the defendant contended that the request was based on facts relevant to the case, and that it called for the application of law to facts, rather than a legal conclusion. The court found as follows:

> The Court agrees with the reasoning set forth in *Golden Valley* and *Naxon*, and concludes that Request No. 19 improperly seeks the admission of a legal conclusion. In Request No. 19, Defendant asks Plaintiff to assume that the allegedly infringing device is used in a certain manner, and then asks Plaintiff to admit that the device, if used in such a manner, infringes on Plaintiff's patent. Determining whether infringement has occurred involves, in the first instance, claim construction,

> which is a legal conclusion drawn by a court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). By asking Plaintiff to admit to infringement in the context of the hypothetical use of its device, Defendant is improperly asking Plaintiff to draw a legal conclusion, which is not permitted by Rule 36.

*Fulhorst*, 1997 WL 873548 at *3 (parallel citations deleted).

As noted by the defendant, the issues in this case are whether the plaintiff has a right to use the acronym's ICAR, CU ICAR, Clemson ICAR, and Clemson University ICAR, not the service marks "International Center for Automotive Research" and/or "Clemson University International Center for Automotive Research."  Further, the issue of the defendant's ability or inability to prohibit the "news media" from using "ICAR" is not before this court.  Requests 17 and 18 ask the defendant to make many assumptions, such as that the "news media" is using "I-CAR" to refer to the "International Center for Automotive Research" on their own initiative; that the news media have no affiliation with Clemson; that Clemson did not adopt the name "International Center for Automotive Research" for the purpose of having the news media refer to it as "ICAR"; and that the plaintiff has not urged the media to use the term "ICAR."  The requests then ask the defendant to make legal conclusions based on these assumptions.  Based upon the foregoing, this court finds that requests to admit 15-18 are improper as they seek to have the defendant admit or deny legal conclusions that are irrelevant to the issues in this case.  Accordingly, the motion to compel is denied.

### *Motion for Rule to Show Cause*

On January 28, 2005, plaintiff Clemson filed a motion for rule to show cause why deponents Paul Morris and Ronnie Swygert should not be deemed in contempt of court for failure to obey subpoenas commanding each to produce and permit the inspection and copying of designated books, documents, and/or tangible things in their possession,

custody, or control. Morris and Swygert, who are represented by defense counsel, filed an opposition to the motion arguing that they have sought to comply with the subpoenas, they have produced documents as requested in the subpoenas, and they have offered to appear for continued depositions.

Morris and Swygert were served with subpoenas on December 10th and 6th, respectively. The subpoenas directed them to appear for deposition and to bring with them certain documents concerning the issues in this case (pl. m. for rule to show cause, ex. A-D). Morris and Swygert were deposed on December 20, 2004. Morris produced no documents, and Swygert produced a single page. Morris, who is an instructor of auto collision repair at R.D. Anderson Applied Technology Center and who also teaches I-CAR education courses as an independent contractor, testified in his deposition that he did not bring any documents and he did not search for any documents that might be responsive to the subpoena because he "just didn't feel like that was [his] place to do that" (Morris dep. 12-13). He further testified that he had documents within his custody, possession, and/or control responsive to the third category listed in the subpoena, specifically "course catalogs, course material, just the general information from I-CAR that I use in the classes that I teach" (Morris dep. 16). He stated that the documents would "reach the ceiling" (Morris dep. 19). Swygert, who is an instructor of auto collision repair at the G. Frank Russell Career Center and who also teaches I-CAR educational courses as an independent contractor, also testified in his deposition that he did not look for documents responsive to the subpoena (Swygert dep. 11-12).

As noted above, Morris and Swygert stated in their response that they have now produced documents and have offered to appear for continued depositions (resp. rule to show cause 3). However, one document appears to still be in contention. In his deposition, Morris testified that the defendant's course schedule for the Greenville/ Spartanburg area is faxed to "every body shop and insurance company in this area" (Morris

dep. 96). The plaintiff argues that Morris should be ordered to produce the list of fax numbers because it is in his control. However, Morris argues that the list is held by Sandra Bridwell of the Greenville/Spartanburg I-CAR Committee and, although he could get a copy of the list for himself, he does not believe that he could turn it over to anyone else because it is owned by I-CAR (Morris dep. 96-97). Swygert testified that the list of fax numbers was in the possession of the class registrars, Jack and Brenda Brazell (Swygert dep. 87). When asked if he could obtain a copy, he stated that he thought he would be able to get a copy (Swygert dep. 87).

The plaintiff asks that the court hold Morris and Swygert in contempt of court for failure to obey a subpoena without adequate excuse pursuant to Federal Rule of Civil Procedure 45 (pl. m. for rule to show cause 8). The plaintiff further asks that the court order the men to produce the requested documents, appear for re-deposition and reimburse the plaintiff for the costs, including attorney fees, of the depositions taken on December 20, 2004. The plaintiff further seeks to have the court extend the seven-hour time limit for the continued depositions. Morris and Swygert argue in response that they are not in possession, custody, or control of the fax list at issue (resp. m. for rule to show cause 3-5). They argue that the plaintiff has not demonstrated that, as mere independent contractors, not employees, officers, or directors of the defendant, they have a legal right to demand the fax list from I-CAR or other third parties. Morris and Swygert further argue that they could not have raised this issue earlier by means of a motion to quash, as the subpoena only asked for documents within their possession, custody, or control (resp. m. for rule to show cause 6). Morris and Swygert testified that they were not represented by counsel until the morning of their depositions. They argue that, contrary to Clemson's claims, it has not suffered any substantial expense or inconvenience as a result of their failure to bring documents to their depositions.

Based upon the foregoing, this court declines to find Morris and Swygert in contempt of court. Morris and Swygert do not have the list of fax numbers in their possession, custody, or control and, accordingly, the plaintiff's request that they be ordered to produce the list is denied. As for documents responsive to the subpoenas that are within their possession, custody, or control and have not yet been produced to the plaintiff, Morris and Swygert are directed to produce such documents within ten (10) days of the date of this order. Morris and Swygert are ordered to appear for continuation of their depositions on dates to be agreed to by the parties. Further, the seven-hour time limit for their depositions[1] is extended by one hour (for a total of eight hours), pursuant to Federal Rule of Civil Procedure 30(d)(2). Lastly, Morris and Swygert are ordered to reimburse the plaintiff for the costs, *not* including attorney fees, for the depositions taken on December 20, 2004.

## *Motion for Protective Order*

On February 23, 2005, the plaintiff moved for a protective order providing that discovery not be had concerning attorney/client communications and work product. The plaintiff contends that during a Federal Rule of Civil Procedure 30(b)(6) deposition of the plaintiff on February 15, 2005, the defendant asked questions concerning privileged matters. One of the issues identified by the defendant in its deposition notice was Clemson's search for documents responsive to the defendant's first requests for production of documents (def. resp. m. for protective order, ex. 1). Clayton D. Steadman, who is General Counsel for Clemson, was produced by Clemson as a witness to testify concerning Clemson's search for said documents.

---

[1] It appears that the first deposition of Morris lasted approximately 3½ hours, and the first deposition of Swygert lasted approximately 2½ hours.

During his deposition, Steadman was questioned by defense counsel about the results of any trademark or trade name searches.[2] Steadman responded that it was his belief that there were no trademark or trade name searches performed by or at the request of Clemson on ICAR (Steadman dep. 34). When asked if there was a search "on something else involving ICAR," Steadman responded affirmatively. When asked what that search was, plaintiff's counsel objected and asserted work product privilege (Steadman dep. 34-35). Steadman was instructed not to answer further questioning as to whether Clemson knew of any trademark or trade name searches performed on ICAR or any variation as defined in the requests on the basis of attorney/client and work product privileges (Steadman dep. 36-38).

The defendant argues that Clemson has not articulated any reasons why any privilege would be applicable and, even if it had, the privilege would be waived (def. resp. m. for protective order 6-7). The defendant argues as follows:

> Here, the issue of whether or not Clemson did a trademark search before misappropriating Defendant's long registered I-CAR trademark is clearly relevant. It is obviously placed in issue by Clemson's suit and Defendant's [c]ounterclaim. Mr. Steadman was presented as a witness to testify on, among other things, Clemson's Response to Defendant's First Request for Production of Documents. Request 9 inquired about the existence of any trademark or trade name searches. Clemson cannot be permitted to place a matter in issue, produce a witness to testify on the issue, and then instruct its witness not to testify.

(Def. resp. m. for protective order 7).

Clemson notes that the question of whether Clemson did a trademark search was answered in the negative with regard to "ICAR." Clemson argues that the defendant's

---

[2] According to Clemson, Steadman was offered to testify only on the topic of Clemson's search for documents responsive to the requests for production. Another witness, Neil Cameron, was presented for the topic of any trademark searches concerning ICAR, Clemson ICAR, or Clemson University ICAR brands or the I-CAR brand registered to the defendant (pl. reply m. for protective order 2-3).

9

further questions as to whether Clemson had any trademark or trade name searches performed on ICAR "or any variation" "intruded into what Plaintiff's counsel deemed worthy of further searching, consideration, and analysis. That is to say, it obviously intruded into the work product privilege" (pl. reply m. for protective order 3-4).

The plaintiff also seeks a protective order with regard to questions posed to David Jenkins Patrick regarding how Patrick found out he was going to be the one to testify "about these matters" during the 30(b)(6) deposition (Patrick dep. 45). Plaintiff's counsel instructed him to answer if he could do so without revealing any communications with the plaintiff's counsel. Patrick responded that the person who instructed him to give the Rule 30(b)(6) deposition was Bob Geolas, an employee of Clemson who is not an attorney for Clemson or Patrick. As argued by the defendant, "[s]ince Mr. Patrick ultimately answered the question, there is no reason for Defendant to further pursue the matter nor is any issue presented by his testimony that requires a ruling from this Court" (def. resp. m. for protective order 7).

Based upon the foregoing, the plaintiff's motion for protective order is granted with regard to Steadman and denied with regard to Patrick.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED that:

(1)   the plaintiff's first motion to compel, filed December 10, 2004, is granted;

(2)   the plaintiff's second motion to compel, filed January 11, 2005, is denied;

(3)   the plaintiff's third motion to compel, filed January 12, 2005, is denied;

(4)   the plaintiff's motion for rule to show cause is granted in part and denied in part, as set forth above; and

      (5)    the plaintiff's motion for protective order is granted in part and denied in part, as set forth above.

IT IS SO ORDERED.

                                    s/Bruce H. Hendricks
                                    United States Magistrate Judge

April 20, 2005

Greenville, South Carolina